IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KRISTIAN J. TURNER,<br><br>Plaintiff,<br><br>vs.<br><br>BAE SYSTEMS INC., *et al.*,<br><br>Defendants. | Case No. 25-cv-00463-DKW-WRP<br><br>**ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT WITH PARTIAL LEAVE TO AMEND**[1] |

On January 6, 2026, Defendants BAE Systems Inc. and BAE Shared Services Inc. ("BAE")[2] filed a Motion for Partial Dismissal of *pro se* Plaintiff Kristian K. Turner's Complaint.  Dkt. No. 20.  Turner opposes the motion, Dkt. No. 27, and BAE has replied, Dkt. No. 28.

Having reviewed the Complaint, the parties' briefs, and the relevant legal authorities, the Court agrees that dismissal is appropriate for some, but not all, of Turner's claims.  Accordingly, the motion to dismiss is GRANTED IN PART and DENIED IN PART, with partial leave to amend, as explained below.

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

[2]According to BAE, the correct name of Defendant BAE Shared Services, Inc. is BAE Systems Shared Services Inc.  *See* Dkt. No. 20-1 at 1.

## FACTUAL & PROCEDURAL BACKGROUND

### I.    The Complaint[3]

In September 2023, Turner was hired as an IT specialist by BAE, a federal military contractor.  *Id*. ¶¶ 10–11.  Turner suffered from "multiple documented physical and mental health conditions," including "post-traumatic stress disorder, major depressive disorder, traumatic brain injury, and severe gastrointestinal issues." *Id*. ¶ 15.  On December 22, 2024, Turner was involved in a motor vehicle accident that resulted in a "whiplash injury to the neck, low back strain, and spasm of both trapezius muscles." *Id*. ¶ 19.

On April 8, 2025, Turner's clinical psychologist completed an ADA accommodation request form, in which he stated that Turner suffered from limitations in focus, concentration, memory, and physical stamina, to the point of being unable to sit or stand for periods longer than 30 minutes. *Id*. ¶¶ 17 & 18. Turner's physician recommended accommodations in the form of a reduced work schedule of 25–30 hours per week, excused absences to attend medical appointments, remote work, flexible start times, ergonomic seating, and "a low-stress work environment with extended deadlines and frequent breaks." *Id*.  Turner made BAE aware of his disabilities and need for accommodation, providing medical

---

[3]The facts are taken from Turner's Complaint, Dkt. No. 1, and are assumed to be true for purposes of Defendants' motion.

documentation to support his claims. *Id*. ¶ 21. In response, BAE granted Turner short-term leaves of absence. *Id*. ¶ 22. Turner then "narrowed his accommodation request" to the ability to attend 2–3 "medically necessary" appointments per week, a reduced work schedule of approximately 25–30 hours per week, and partial remote work. *Id*.

During his employment, Turner also "engaged in protected whistleblower activity." *Id*. ¶ 24. Having observed "irregularities in asset handling" and "improper disposition of company property," Turner reported his concerns to BAE. *Id*. ¶¶ 24–25. BAE reacted to his complaint with hostility, subjecting him to increased scrutiny, exclusion from professional programs, demotion to entry-level duties, and denial of requests for paid time-off and for a security clearance. *Id*. ¶¶ 27–29.

On April 22, 2025, BAE terminated Turner's employment on the grounds that he was unable to perform the essential functions of his job even with an accommodation. *Id*. ¶ 32.

## II.    Procedural History

Turner filed discrimination and retaliation charges against BAE with both the Hawaiʻi Civil Rights Commission ("HCRC") and Equal Employment Opportunity Commission ("EEOC"). *Id*. ¶ 53. On July 8, 2025, the HCRC issued a Right-to-

Sue letter to Turner, which Turner claims not to have received until August 10, 2025. *Id.* ¶ 37-39.[4]

On October 28, 2025, Turner initiated this action by filing his Complaint. Dkt. No. 1. Turner asserts the following claims: (1) failure to accommodate and retaliation under the ADA; (2) Family and Medical Leave Act ("FMLA") violations and retaliation; (3) violations of two federal whistleblower statutes, the Defense Contractor Whistleblower Protection Act ("DCWPA"), 10 U.S.C. § 4701, and the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712; (4) violations of the Hawaii Whistleblower Act, HRS § 378-62; (5) wrongful termination; and (6) intentional infliction of emotional distress ("IIED") ("Counts I–VI").

On January 6, 2026, BAE moved for partial dismissal of the Complaint, arguing that (1) Turner's ADA claims are time-barred;[5][6] (2) the Complaint failed to state a claim under the two enumerated federal whistleblower statutes; and (3)

---

[4]Turner further states that HCRC right-to-sue letter was "cross-filed with the EEOC," without elaboration. *Id.* ¶ 37.

[5]Attached to BAE's motion is a copy of the EEOC's right-to-sue letter to Turner, dated June 6, 2025, which is referenced in, but not appended to, the Complaint. Dkt. No. 20-3. The Court takes judicial notice of this letter. *Blankenship v. Citimortgage, Inc.*, 2014 WL 6835688, at *3 (E.D. Cal. Dec. 3, 2014) ("A court may also take judicial notice of matters of public record in deciding a motion to dismiss."); *Shareef v. McHugh*, 2017 WL 754326, at *4 (D. Haw. Feb. 27, 2017) ("[C]ourts routinely take judicial notice of the records of administrative bodies, including EEOC right-to-sue letters, as public records.").

[6]BAE also attaches to its motion an EEOC log which it claims shows that Turner electronically accessed and downloaded the right-to-sue letter on the same day it was issued. Dkt. No. 20-4. Turner argues that this document was not authenticated, nor can BAE's offered conclusion be drawn from this attachment. Dkt. No. 27 at 3–5. As the Court explains below, the date on which Turner did or did not access the letter is not material to the timeliness of his ADA claims. The Court therefore declines to resolve the parties' disputes over the letter's distribution or import.

Turner's IIED claim is barred by the exclusivity provisions of Hawai'i's Workers' Compensation Law, HRS § 386-5.  Dkt. No. 20.

On January 22, 2026, Turner filed his opposition, responding that (1) his ADA claim was timely filed; (2) his federal whistleblower claims were sufficiently pled; and (3) the exclusivity provision of the Workers' Compensation Law cited by BAE was inapplicable.  Dkt. No. 27.  Regarding timeliness, Turner argues that the Court should measure the timing window for his ADA claim from the July 8, 2025 HCRC right-to-sue letter and that equitable tolling should then be applied due to his inter-island travels, which delayed his receipt of the same.  *Id*. at 3–9.  On March 2, 2026, BAE replied, substantially repeating the arguments in its opening brief and adding that equitable tolling was inapplicable under the circumstances described by Turner. Dkt. No. 28.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).  *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."  Fed.R.Civ.P. 15(a)(2).  Indeed, the Ninth Circuit has made clear that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotation marks omitted).  Nonetheless, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The Court liberally construes a pro se pleading.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *Lopez*, 203 F.3d at 1131 ("[T]he rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant.") (citation and internal quotation marks omitted).  However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim.  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

Before the Court is BAE's Motion for Partial Dismissal.  Dkt. No. 20.  The Court addresses each of the motion's arguments below.

## I.    ADA Claims

To bring discrimination or retaliation claims under the ADA, a plaintiff must file a complaint within 90 days of receipt of the EEOC's right-to-sue letter.  42 U.S.C. § 12117(a).  This 90-day period "constitutes a statute of limitations," and if the claimant fails to timely file, "the action is barred accordingly."  *Scholar v. Pac. Bell*, 963 F.2d 264, 266–67 (9th Cir. 1992).

Here, the EEOC issued its right-to-sue letter to Turner on June 6, 2025.  Dkt. No. 20-3.  Turner did not file his Complaint until October 28, 2025, 144 days later, thus rendering his ADA claims untimely.  Dkt. No. 1.  Turner nevertheless raises several arguments in an attempt to salvage his claims.

Turner first asserts that the Court should measure the 90-day filing period based on his HCRC right-to-sue letter, rather than the EEOC letter.  Dkt. No. 27 at 1, 5–6.  It is not clear why the Court should do so.  Federal claims, like those asserted here under the ADA, arise out of the EEOC's proceedings, not out of its state counterpart.  *See Baker v. Res-Care Inc.*, No. C 05-01338 (SBA), 2005 WL 1500847, at *4 (N.D. Cal. June 24, 2005) (holding that "[w]hile [p]laintiff has alleged that she received a right-to-sue letter from the [state agency]," such a letter typically "cannot substitute for a right-to-sue letter from the EEOC").  The HCRC's letter *could*, in some circumstances, trigger a plaintiff's right to bring federal claims, but only where the EEOC itself has not acted.  *See Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) ("We hold that where, as here, a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency.").  That is not the case here.

Moreover, even if the Court did what Turner asks, reliance on the HCRC letter alone would not make his ADA claims timely.  The HCRC right-to-sue letter was, per Turner's Complaint, dated July 8, 2025.  Dkt. No. 1 ¶ 37.  Turner does not state on what day it arrived at his residence, but courts assume that a right-to-sue letter arrives at its destination three days after its issuance date—in this case, that would make the delivery date July 11, 2025.  *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*,

495 F.3d 1119, 1124 (9th Cir. 2007).  Based on that date, Turner was obliged to file his Complaint within 90 days or by October 9, 2025.  But he failed to do so.

Turner next argues that the Court should begin measuring the deadline to file not from the date on which the right-to-sue letter was *delivered*, but rather the day on which he "actually retrieved and received" the letter.  He claims that date to be August 10, 2025 or more than a month after it was issued.  Dkt. No. 1 ¶ 38.  Turner claims he had been "temporarily residing on another island" at the time of the letter's delivery and that he was not aware of it until returning to his home and opening his mail.  Dkt. No. 27 at 6.  Turner asserts that the Court should apply equitable tolling due to this absence from home during the time when the right-to-sue letter arrived, as well as due to unidentified "serious disability-related barriers and major instability" that "made timely litigation action extraordinarily difficult."  *Id*. at 6–7.

These arguments, however, have several problems.  First, the Ninth Circuit has made clear that the 90-day period "beg[ins] running when delivery of the right-to-sue notice [is] attempted at the address of record with the EEOC."  *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997).  That Turner was not present to receive the letter is irrelevant.  Second, regarding equitable tolling, that doctrine is applicable where "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of h[er] claim."  *Isagawa v. Homestreet Bank*, 769 F. Supp. 2d 1255, 1234 (D. Haw. 2011) (internal quotation marks

omitted); *see also Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008) ("Equitable tolling is typically granted when litigants are unable to file timely as a result of external circumstances beyond their direct control."). Courts have uniformly held that mere lack of presence at the address where a notice was mailed does not justify equitable tolling. *See, e.g.*, *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) (holding that being out of town "at the time that the EEOC notice was received" and filing after having "personally received notice" was a "garden variety claim of excusable neglect" that did not merit equitable tolling). Third, reference to "serious" impairments that prevented him from timely filing, Dkt. No. 27 at 7, "must normally be alleged in the complaint." *Udom v. Fonseca*, 846 F.2d 1236, 1238 (9th Cir. 1988). Here, they are not, at least not with sufficient specificity. To the extent detailed, Turner's impairment claims appear in his opposition brief and declaration in support of the same, not in the Complaint. *Cf.* Dkt. No. 1 at ¶ 38 with Dkt. No. 26 at ¶¶ 14-16. The Court may not consider non-pleading representations when evaluating equitable tolling as part of a motion to dismiss.

For these reasons, the Court finds that Turner's ADA claims are untimely and grants the motion to dismiss. Because Turner "could conceivably cure these deficiencies" by amending his pleadings and in light of his *pro se* status, this dismissal is with leave to amend. *Jones v. Rising Phoenix Holdings Corp.*, 2025 WL 2802180, at *7 (D. Haw. Oct. 1, 2025); *Lopez*, 203 F.3d at 1130. So it is clear, to

the extent Turner relies upon equitable tolling in relation to any future ADA claim, the facts supporting tolling must be made clear in any amended complaint.

## II.    Federal Whistleblower Claims

Count III of Turner's Complaint asserts claims under two federal whistleblower statutes, the DCWPA and the NDAA.  Dkt. No. 1 ¶¶ 76–85.  BAE argues that Turner has failed to plead sufficient facts for these claims for two reasons.  First, BAE asserts that Turner has failed to allege a qualifying disclosure of information.  Second, it argues that Turner failed to exhaust his administrative remedies.  Dkt. No. 20-1 at 9–13.  The Court disagrees on both accounts.

To survive a motion to dismiss a claim under the DCWPA, a plaintiff must plausibly allege that: "(1) [he] made a disclosure that [he] reasonably believe[d] is evidence of a violation related to a DoD contract; and (2) [his] employer discharged, demoted, or otherwise discriminated against [him] because of that disclosure." *Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1216 (9th Cir. 2023) (internal quotation marks omitted).  Similarly, the NDAA "protects an employee of a contractor who discloses information the employee 'reasonably believes is evidence of' . . . misconduct," and makes a "protected disclosure of such misconduct to '[a] [f]ederal employee responsible for contract or grant oversight or management at the relevant agency." *Krzesni v. Wellpinit Sch. Dist.*, 2025 WL 1427444, at *6 (E.D. Wash. May 16, 2025) (quoting 41 U.S.C. § 4712(a)).  An employee makes a

protected disclosure if "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the government evidence gross mismanagement, a gross waste of funds, an abuse of authority, or a violation of any law, rule, or regulation." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 890 (9th Cir. 2004) (internal quotation marks and alterations omitted).[7]

Turner does not dispute that a protected disclosure is necessary to state a federal whistleblower claim. *See* Dkt. No. 27 at 9. Turner instead argues—and the Court agrees—that his Complaint adequately alleges that he made such a disclosure. *Id*. In the Complaint, Turner states that he made "disclosures regarding asset handling and chain-of-custody risks . . . in direct fulfillment of his obligations under federal contractor compliance programs." Dkt. No. 1 ¶ 78. More specifically, Turner alleges that he reported that "the on-site Security Manager had sold a company workstation" and "made comments about taking equipment home or selling items." *Id*. ¶ 81. Clearly, then, Turner *has* alleged a disclosure within his Complaint relating to the improper disposition or even theft of government property by his co-worker. That is enough. *Ashcroft*, 556 U.S. at 678.

---

[7]The Court in *Coons* was concerned with the application of the Whistleblower Protection Act, 5 U.S.C. § 2302. 383 F.3d at 888. "Due to scant interpretive case law" regarding the DCWPA and NDAA, courts analyzing those statutes have tended to "dr[aw] from cases regarding the parallel provisions of the Whistleblower Protection Act." *Krzesni*, 2025 WL 1427444, at *7 n.4; *see also Kappouta*, 60 F.4th at 1217 (citing to *Coons* while analyzing the disclosure requirements of the DCWPA).

As for exhaustion, both whistleblower statutes require that a person allegedly subjected to reprisals for making a protected disclosure must first submit a complaint to the Inspector General of the appropriate agency. *See* 10 U.S.C. § 4701(c)(1); 41 U.S.C. § 4712(b)(1). BAE argues that Turner has not alleged that he did so. Dkt. No. 20-1 at 12–13. In response, Turner attaches a letter from the Office of Inspector General for the Department of Defense to his opposition brief, in which the Office declined to pursue an investigation of Turner's claims. Dkt. No. 27-2. BAE urges the Court not to consider this evidence, Dkt. No. 28 at 10, but courts are permitted to take judicial notice of such records. *See United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2009) ("Judicial notice is appropriate for records and reports of administrative bodies."); *Bloedow v. Planned Parenthood of the Great N.W. Inc.*, 2013 WL 6631771, at *4 (W.D. Wash. Dec. 16, 2013) (taking judicial notice of an Office of Inspector General record in deciding a motion to dismiss). The Court does so here and finds that Turner has satisfied the exhaustion requirement of the federal whistleblower statutes. *See also* Dkt. No. 1 at ¶ 85 (alleging engagement with the OIG regarding potential ADR). Defendants' motion is therefore denied with respect to these claims.

## III. IIED Claim

BAE asserts that Turner's IIED claim is barred by the Hawai'i Workers' Compensation Law. Dkt. No. 20-1 at 13–15. The Court agrees. The Workers'

Compensation Law contains an exclusivity provision which bars emotional distress claims against an employer "arising out of and in the course of the employment . . . except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto."   HRS § 386-5; *see Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir. 1990) (finding IIED claim arising from employment was barred by Workers' Compensation Statute). Turner does not allege that his IIED claims are related to sexual harassment or sexual assault, nor, given the circumstances pled, can he.

Rather, Turner argues that the exclusivity provision does not apply, relying on several inapposite cases.  First, Turner cites to multiple decisions from California district courts.  *See* Dkt. No. 27 at 13–14 (citing *De Peralta v. Fox. Rest. Concepts, LLC*, 2018 WL 748287 (C.D. Cal. Feb. 6, 2018); *Vanderhule v. Amerisource Bergen Drug Corp.*, 2017 WL 168911, at *4 (C.D. Cal. Jan. 17, 2017); *Corona v. Quad Graphics Printing Corp.*, 217 F. Supp. 3d 1068 (C.D. Cal. 2016)).  These cases interpret *California*'s workers' compensation law, not HRS § 386-5, and thus are of no relevance.  Second, Turner cites to *Hughes v. Mayoral*, 721 F. Supp. 2d 947 (D. Haw. 2010), in which the court determined that the Hawaii Workers' Compensation Law "does not bar claims based on intentional conduct of an employer or employee because such claims are not based on accidents related to employment."  This decision, however, was based on the court's analysis of then-current Hawai'i state

- 14 -

court cases, *id*. at 964, and has since been superseded, *see, e.g.*, *Hobro v. United Airlines, Inc.*, 2022 WL 4468518, at *8 (D. Haw. Sept. 26, 2022) (holding that HRS § 386-5 "precludes [p]laintiff's claim against [defendant] for intentional infliction of emotional distress"). Accordingly, Turner's IIED claim is dismissed and because any attempt to amend would be futile, dismissal is without leave to amend.

## CONCLUSION

For the reasons set forth herein, BAE's Motion for Partial Dismissal, Dkt. No. 20, is GRANTED IN PART and DENIED IN PART. Turner's ADA claims (Count I) are dismissed without prejudice and with leave to amend; the requested dismissal of Turner's DCWPA claim, 10 U.S.C. § 4701, and NDAA claim, 41 U.S.C. § 4712, is denied (Count III); and Turner's IIED claim (Count VI) is dismissed with prejudice and without leave to amend. Should Turner wish to amend his pleadings with respect to Count 1, he must file a standalone First Amended Complaint that does not incorporate or rely on his previous filings no later than April 30, 2026. If no amended pleading is filed by that date, this action will proceed on the claims remaining.

IT IS SO ORDERED.

DATED: April 9, 2026 at Honolulu, Hawai'i.



_____
Derrick K. Watson
Chief United States District Judge